UNITED STATES (WHEATON v.). See Case No. 17,487.

## Case No. 16,670.

### UNITED STATES v. WHIDDEN.

[3 Ware, 269.][1]

District Court, D. Maine. Feb., 1861.

CUSTOMS DUTIES—RE-EXPORTATION BONDS—CONSTRUCTION OF REVENUE LAWS.

1. When goods entered in debenture for re-exportation, have been exported, passed through a foreign custom-house and are subject to a retail trade, they are mixed with the common merchandise of the country, and may be again imported into this country.

2. The interpretation of doubtful and ambiguous words in a particular law, are, in revenue laws, to be explained in subservience to the common policy of the country.

At law.

Mr. Shepley, U. S. Dist. Atty.
Mr. Rand, for respondent.

WARE, District Judge. This is a suit on a debenture bond in a penalty of $400. The condition of the bond is that the penalty shall not be due if the goods named, 230 ship's knees, shall not be relanded at any port or place within the limits of the United States, and the certificates required of their delivery at Newport, N. S., or at any other port or place out of the United States shall be produced within one year to the collector of the customs of Portland.

The agreed facts of the case are, that the knees in question were imported from Nova Scotia a few days before the reciprocity treaty with Great Britain went into operation, and entered in bond. Immediately after, they were exported to Nova Scotia under the act of congress, March 3, 1845 [5 Stat. 750], there landed and duly entered at that custom-house. A short time after such entry and landing, they were taken on board the same vessel, brought to this port and duly offered for entry, being then duty-free under the treaty.

On the facts stated, it is evident that no deception was practiced or intended on the officers of the United States, and from all the circumstances, we may believe that no hardship by commencing a suit on the bond was intended to the defendants. The facts present a naked question of law, whether goods entered from a foreign country in bond, and duly exported, and all the requirements of the United States' laws complied with, may

be again imported into the United States. These require them to be landed in a foreign port, and to pass through a foreign custom-house, and thus be mixed in the common mass of merchandise in that country.

Of the general question of right, it seems to me that no doubts can be entertained unless there be a statute expressly forbidding it. There is no general law of the United States prohibiting it, the United States have no interest in preventing it, nor do I see, if the property in a foreign country has gone into the general mass of consumable commodities, how it then is to be executed. When this merchandise is mixed by retail trade with the common mass, it carries with it from hand to hand, no ear-mark by which it is to be distinguished from other merchandise of the same character. But it is agreed on the part of the United States, that this is expressly forbidden in the law of 1845, which authorized this exportation. That act in its 9th section, provides, "that no goods or merchandise exported according to the provisions of this act, shall be voluntarily landed or brought into the United States," and on being so, every person concerned in the act shall be liable to a penalty of $400. The language of this statute is express, and if no qualification of it is to be admitted, I do not see how this case is to be extracted from it. Whether the act complained of in this suit is prohibited by this act, depends on the meaning of these words—no goods. These, in their ordinary sense, include all goods, and this is the sense in which they must be received, provided in a just interpretation of the act a narrower meaning ought not to be admitted. After some reflection on the subject, I have come to the conclusion that they are used in this act in a more restricted sense. When goods entered in debenture are re-exported, have passed through a foreign custom-house, are landed and have gone into the general mass of property, and like that, subject to be consumed, and bought and sold by retail, they are no longer in the sense of this statute the same goods. They have become foreign goods and are liable, like any other merchandise, to be imported again into this country. It is admitted that this is rather a strained meaning of the words, but it is consonant to the general policy of all debenture laws, and to the whole policy of our government on this subject.

All drawbacks have their foundation mainly on one principle, that of favoring the carrying trade. To engage in this requires no outlay of capital beyond furnishing the vehicle in which the goods are carried, and a large part of the profit of transportation is for the payment of labor. Besides this consideration, every nation that has considerable trade has an interest in training up to the labor of the seas a hardy and brave race of men for their naval service. So intimately connected with national prowess and defence is this, that all nations, inhabiting the sea coast with a share of trade, have, in a greater or less degree, en-

---

[1] [Reported by George F. Emery, Esq.]

couraged their poorer and more laborious population to engage in the fisheries, by which, they are inured to the dangers and anxieties of this element, by relieving that trade of all unnecessary burdens, as well as by direct bounties. When the products of foreign countries are imported for the purpose of being consumed in this country, they are burthened with duties, which are remitted on re-exportation, or so much is retained only as is necessary to pay the expense of landing and re-delivering them. The whole protective policy of the government is to prevent their being re-landed furtively and going into the consumption of the country. When this is effected, the whole of the general object of the government is satisfied. That such is the policy of this government, is, I think, sufficiently proved by our whole legislation on this subject. Our country early went into the policy of favoring the carrying trade, and the general system of drawbacks on re-exportation was carefully digested in the general revenue act of 1799, §§ 75–82 (1 Stat. 680, etc.). The whole object of this law, so far as it is protective, is to prevent goods thus re-exported, from being brought back and going into the consumption of the country. In the construction of all laws, this general policy ought to be kept in view. In the interpretation of all arbitrary laws, and those granting drawbacks are eminently such, the whole system is to be taken together; the general object to be obtained; and when the policy is apparent, if there be in the law itself, or in any subsequent regulation words of doubtful or ambiguous meaning, this is the key to unlock them; because the legislature can never, by particular regulation, be desirous of counteracting their general policy. Even in the plainest language, courts have sometimes come to the conclusion, that the legislators have said, but did not mean what they apparently did. But when such terms are used that they are not to be mistaken, we have nothing to do but to carry the law into execution, for the courts are not the ultimate judges of the policy of the law. But all, or almost any language may be ambiguous or doubtful, and may be more or less, in its sense, restrained or extended by the circumstances in which it is used, by the intent of law, and the general object which the legislature had in view. This is an imperfection in all terms that express moral or metaphysical ideas, and necessarily arises from the fact that these ideas are in their nature, a little vague. There is not, as in mathematical definitions, any archetype in nature to which they can be compared, but they lie with a little uncertainty in every mind. My opinion is, that, however express and general the words of the statute are, we may be justified in confining their sense, and that these goods, when they have been entered a foreign custom-house, and landed, have entered into the general mass of merchandise, are no longer, in a mercantile sense, the same goods.

The result is that the suit must be dismissed, but, as the words of the statute are express, no costs will be given.